**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARIELYZ AVENDANO and FREDY LOPEZ, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiffs,<br><br>v.<br><br>CUERNO RESTAURANTS LLC *d/b/a* CUERNO,<br><br>Defendant. | Case No.: 1:26-cv-04470<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs ARIELYZ AVENDAÑO and FREDY LOPEZ (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this First Amended Class and Collective Action Complaint against Defendant CUERNO RESTAURANTS LLC d/b/a CUERNO ("Defendant" or "Cuerno"), and state as follows:

**INTRODUCTION**

1. Plaintiff FREDY LOPEZ alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid overtime wages, due to an invalid tip credit policy; (2) unpaid

wages, due to Defendant's failure to compensate Plaintiffs for all hours worked, including hours worked during purported meal breaks; (3) unpaid tips, due to an illegal tip retention policy; (4) liquidated damages; and (5) attorneys' fees and costs.

2. Plaintiffs further allege, pursuant to New York Labor Law ("NYLL"), that they and others similarly situated are entitled to recover from Defendant: (1) unpaid minimum wages and overtime compensation, due to an invalid tip credit; (2) unpaid wages for all hours worked, including hours worked during purported meal breaks; (3) monies for the illegal retention of gratuities; (4) unreimbursed uniform expenses and unpaid uniform maintenance allowances; (5) unpaid call-in pay premiums; (6) statutory penalties, including for violations of the Wage Theft Prevention Act ("WTPA"); (7) liquidated damages; and (8) attorneys' fees and costs.

3. Defendant operates a Mexican steakhouse and bar known as "Cuerno," located at 1271 Avenue of the Americas, in Rockefeller Center in Midtown Manhattan, New York, NY 10020.

4. Plaintiffs, potential collective plaintiffs, and putative class members are all current and former non-exempt employees of Defendant, and were all victims of Defendant's scheme to underpay employees throughout its enterprise. Plaintiffs bring this wage-and-hour class and collective action on behalf of themselves and all persons who, during the applicable limitations period up to and including the present, were similarly underpaid by Defendant in violation of the protections afforded under the FLSA and NYLL.

## JURISDICTION AND VENUE

5. Defendant is subject to personal jurisdiction in this judicial district.

6. This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

**PARTIES**

8. Plaintiff ARIELYZ AVENDAÑO is a resident of the State of New York.

9. Plaintiff FREDY LOPEZ is a resident of the State of New York.

10. Corporate Defendant CUERNO RESTAURANTS LLC d/b/a CUERNO is a limited liability company authorized to conduct business in the State of New York, with a principal place of business located at 1271 Avenue of the Americas, New York, NY 10020 and an address for service of process located at c/o Cogency Global Inc., 122 East 42nd Street, 18th Floor, New York, NY, 10168. Corporate Defendant does business as a Mexican steakhouse, bar, and event venue, offering Northern Mexican cuisine, located in the Time & Life Building at Rockefeller Center.

11. At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the Relevant State Wage and Hour Laws.

12. At all relevant times, Defendant was an "employer" and "person" within the meaning of Section 15(a) of the FLSA and the Relevant State Wage and Hour Laws.

13. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendant.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

14. Plaintiff LOPEZ brings claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to, food

runners, servers, waiters, bussers, bartenders, barbacks, expeditors, dishwashers, porters, cooks, and other similarly situated non-exempt workers) employed by Defendant on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

15. At all relevant times, Plaintiff LOPEZ and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper wages due to failure to compensate employees for all hours worked, including time worked during meal breaks. The claims of Plaintiff LOPEZ stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

16. Moreover, Plaintiff LOPEZ brings claims as to tipped employees as Defendant was not entitled to take any tip-credits under the FLSA or to compensate Plaintiff LOPEZ and tipped FLSA Collective Plaintiffs at a sub-minimum wage hourly rate because they improperly retained gratuities and failed to satisfy all statutory requirements for taking a tip credit. Plaintiff LOPEZ and FLSA Collective Plaintiffs who were tipped employees were compensated at a sub-minimum wage hourly rate because Defendant improperly retained gratuities and failed to satisfy all statutory requirements for taking a tip credit.

17. The claims of Plaintiff LOPEZ stated herein are essentially the same as those of FLSA Collective Plaintiffs.

18. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names

and addresses are readily available from Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

**RULE 23 CLASS ALLEGATIONS**

19. Plaintiffs bring claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to, food runners, servers, waiters, bussers, bartenders, barbacks, expeditors, dishwashers, porters, cooks, and other similarly situated non-exempt workers) employed by Defendant on or after the date that is six (6) years prior to the filing of the Complaint in this case (the "Class" or "Class Members").

20. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

21. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of servers, runners, etc. ("Tipped Subclass") who also number more than forty (40). Plaintiff LOPEZ is a member of both the Class and the Tipped Subclass. Plaintiff AVENDANO is a member of the Class.

22. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of Defendant's failure to: (i) compensate Plaintiffs and Class Members for all hours worked, including time worked during purported meal breaks; (ii) reimburse Plaintiffs and Class Members for required uniform expenses and pay required uniform maintenance allowances; (iii) pay call-in pay premiums when employees who reported for work were sent home before the completion of their scheduled shifts; and (iv) provide accurate wage notices upon hiring (and as required thereafter) and accurate wage statements as required pursuant to the NYLL.

23. Furthermore, Plaintiff LOPEZ and the Tipped Subclass also suffered as a result of Defendant's failure to pay them the proper minimum wage, Defendant's unlawful withholding of gratuities through an invalid tip pooling scheme, and Defendant's unlawful misappropriation of the tips that they earned. Plaintiff LOPEZ and the Tipped Subclass members were subjected to Defendant's policy and practice of deducting a tip credit despite Defendant's failure to observe requirements of State wage laws. In violation of the law, Defendant failed to (i) provide tipped employees with the statutorily required notice of any tip credit; (ii) record any tip credit allowance taken on periodic wage statements and notices given to Plaintiff LOPEZ and Tipped Subclass Members; (iii) limit non-tipped "side work" performed by tipped Plaintiff LOPEZ and Tipped Subclass Members to less than two (2) hours, or less than twenty percent (20%), of each shift; (iv) limit non-tipped continuous "side work" to less than thirty (30) consecutive minutes; (v) maintain and provide tip sheets reflecting tips earned and distributed; and (vi) refrain from retaining cash gratuities collected at the end of each service.

24. Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

25. Plaintiffs' claims of Defendant's failure to provide proper wage notices and statements are also typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.

26. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

27. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage-and-hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would

result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28. Defendant and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendant employed Plaintiffs and the Class Members within the meaning of the NYLL;

b. What were the policies, practices, programs, procedures, protocols, and plans of Defendant regarding the types of work and labor for which Defendant did not pay the Class Members properly;

c. At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay the Class Members for their work;

d. Whether Defendant operated its business with a policy of failing to pay Plaintiffs and Tipped Subclass Members all wages owed, due to an invalid tip credit policy;

e. Whether Defendant properly provided notice to Plaintiffs and Tipped Subclass Members that Defendant was taking a tip credit;

f. Whether Defendant illegally retained gratuities, including cash tips collected at the end of service, earned by Plaintiffs and Tipped Subclass Members;

g. Whether Defendant accurately tracked the amount of tips earned each day and maintained tip sheets thereof;

h. Whether Defendant required tipped Plaintiffs and Tipped Subclass Members to engage in non-tipped duties exceeding two (2) hours, or twenty percent (20%), of each shift;

i. Whether Defendant required tipped Plaintiffs and Tipped Subclass Members to engage in non-tipped duties for continuous periods of time exceeding thirty (30) minutes;

j. Whether Defendant took the proper amount of tip credit allowance for each payment period under the NYLL;

k. Whether Defendant required Plaintiffs and Class Members to perform compensable work during purported meal breaks for which Defendant failed to compensate them;

l. Whether Defendant required Plaintiffs and Class Members to purchase, launder, and maintain required uniforms without paying the required reimbursement and maintenance allowances under 12 NYCRR §§ 146-1.7 and 146-1.8;

m. Whether Defendant failed to pay call-in pay premiums to Plaintiffs and Tipped Subclass Members who reported for scheduled shifts but were sent home prior to completing those shifts, in violation of 12 NYCRR § 146-1.5;

n. Whether Defendant provided proper wage statements informing Plaintiffs and Class Members of the amount of any tip credit taken for each payment period;

o. Whether Defendant provided proper wage statements informing Plaintiffs and Class Members of the information required to be provided on wage statements under the NYLL; and

p. Whether Defendant provided proper wage notices, at the date of hiring and annually thereafter, to Class Members per the requirements of the NYLL.

## STATEMENT OF FACTS

***Plaintiff Arielyz Avendaño's Employment Background***

30. In or around May 2025, Plaintiff ARIELYZ AVENDAÑO was hired by Defendant to work as a dishwasher and porter at Defendant's restaurant, Cuerno, located at 1271 Avenue of the Americas, New York, NY 10020.

31. Plaintiff AVENDAÑO worked as a dishwasher and porter for Defendant continuously from in or around May 2025 until on or about March 2026, when she was terminated by Defendant.

32. Throughout her employment, Plaintiff AVENDAÑO was compensated by Defendant at an hourly rate of $20.00 per hour.

33. Throughout her entire employment, Plaintiff AVENDAÑO was scheduled to work five (5) days per week, Wednesday through Sunday. On each scheduled day, Plaintiff AVENDAÑO was scheduled to work from 6:00 a.m. to 2:00 p.m., for a total of approximately eight (8) hours per shift, and approximately forty (40) hours per week.

***Plaintiff Fredy Lopez's Employment Background***

34. Plaintiff FREDY LOPEZ was employed by Defendant to work as a waiter at Defendant's restaurant, Cuerno, located at 1271 Avenue of the Americas, New York, NY 10020, during two consecutive periods of employment.

35. Plaintiff LOPEZ's first period of employment began in or around May 2025 and continued until in or around early August 2025.

36. Plaintiff LOPEZ's second period of employment began in or around mid-September 2025 and continued until on or about February 20, 2026.

37. Throughout his employment, Plaintiff LOPEZ was compensated by Defendant at the prevailing tip credit minimum wage rate applicable in New York City.

38. Throughout his employment, Plaintiff LOPEZ was regularly scheduled to work six (6) of the following three (3) types of shifts per week, depending on Defendant's scheduling:

a. For lunch shifts, Plaintiff LOPEZ was scheduled to start at 9:30 a.m. and work until 4:00, 5:00, or 6:00 p.m.,

b. For dinner-opener shifts, Plaintiff LOPEZ was scheduled to start at 3:30 p.m. and work until 10:00 or 11:00 p.m., and

c. For dinner-closer shifts, Plaintiff LOPEZ was scheduled to start at 4:30 p.m. and work until 12:00 a.m. or 1:00 a.m.

39. Approximately once per week, Plaintiff LOPEZ was scheduled to work double shifts, working both lunch and dinner shifts on the same day. As Plaintiff LOPEZ was regularly scheduled to work six (6) shifts per week, Plaintiff LOPEZ was regularly scheduled to work over forty-five (45) hours a week. Each week, Plaintiff LOPEZ would work his scheduled and additional hours beyond his scheduled hours without compensation.

40. As examples, specific workweeks where Plaintiff LOPEZ worked over forty (40) hours, but was not compensated for all his work time include, but are not limited to, the following: (i) the week ending on October 12, 2025, where Plaintiff LOPEZ is recorded as working over 42 hours, but worked hours beyond that, (ii) the week ending on October 19, 2025, where Plaintiff LOPEZ is recorded as working over 45 hours, but worked hours beyond that, (iii) the week ending on October 26, 2025, where Plaintiff LOPEZ is recorded as working over 50 hours, but worked hours beyond that, and (iv) the week ending on November 2, 2025, where Plaintiff LOPEZ is recorded as working over 44 hours, but worked hours beyond that.

41. From in or around November 2025 onward, Plaintiff LOPEZ was scheduled to work only dinner shifts.

42. At all relevant times, FLSA Collective Plaintiffs and Class Members worked similar hours and were subject to the same scheduling, compensation, and wage policies and practices implemented by Defendant.

***Defendant's Failure to Provide Tip Notice and Invalid Tip Credit Policy***

43. At all relevant times, Defendant paid tipped employees, including Plaintiff LOPEZ and tipped FLSA Collective Plaintiffs and Tipped Subclass Members, at the tip credit minimum wage rate, as purportedly permitted by the FLSA and the NYLL.

44. However, Defendant was not entitled to claim any tip credit allowance from the wages of Plaintiff LOPEZ or any tipped FLSA Collective Plaintiffs or Tipped Subclass Members under the FLSA or the NYLL because Defendant: (i) failed to provide the statutorily required notice of any tip credit at the time of hire and at any time thereafter; (ii) failed to record the tip credit allowance taken on periodic wage statements and notices given to Plaintiff LOPEZ and Tipped Subclass Members; (iii) required Plaintiff LOPEZ and Tipped Subclass to spend more than two (2) hours, or twenty percent (20%), of each shift engaged in non-tipped activities; (iv) required Plaintiff LOPEZ and Tipped Subclass to perform non-tipped "side work" for continuous periods of time exceeding thirty (30) minutes; (v) implemented an invalid tip-pooling scheme through which tips earned by Plaintiff LOPEZ and Tipped Subclass were retained by Defendant and/or distributed to managers and other ineligible recipients; and (vi) failed to provide Plaintiff LOPEZ and Tipped Subclass with tip sheets reflecting the tips earned and distributed for each shift, while management routinely retained the cash tips collected at the end of each service.

45. Defendant failed to provide Plaintiff LOPEZ, tipped FLSA Collective Plaintiffs, and Tipped Subclass Members who worked as tipped employees with the written notice of any tip credit required by the FLSA and the NYLL—including, but not limited to, the notice required under 12 NYCRR § 146-2.2—at the time of hire or at any time thereafter.

46. The tip credit notice provisions of the FLSA and 12 NYCRR § 146-2.2 require, among other things, that an employer provide each tipped employee with written notice, in English and any other language spoken by the employee as a primary language, of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and that extra pay is required if tips are insufficient to bring the

employee up to the basic minimum hourly rate. Defendant failed to comply with any of these requirements.

47. Plaintiff LOPEZ and other tipped employees were paid at a tip-credit rate, which was invalidated due to Defendant's failure to satisfy the regulatory notice requirements of the FLSA and the NYLL, including 12 NYCRR § 146-2.2.

***Excessive Non-Tipped "Side Work" Performed by Tipped Plaintiff***

48. Throughout his employment, Plaintiff LOPEZ was likewise required by Defendant to engage in non-tipped "side work", including but not limited to folding napkins, performing pre-service preparation, and post-service cleanup duties. As a tipped server, Plaintiff LOPEZ engaged in non-tipped "side work" exceeding two (2) hours or twenty percent (20%) of each shift, and engaged in continuous non-tipped "side work" for periods of time exceeding thirty (30) consecutive minutes.

49. It is Defendant's policy to require tipped employees to report to work substantially in advance of the start of customer service in order to perform pre-service preparation work, including napkin folding, polishing of silverware and glassware, restaurant set-up, and other non-tipped tasks. Tipped employees, including Plaintiff LOPEZ, regularly performed at least one (1) hour of such non-tipped work prior to the start of service. Tipped employees, including Plaintiff LOPEZ, were also required to remain at the restaurant after the conclusion of service to perform additional non-tipped post-service work, including breakdown, cleaning, and re-setting of the restaurant for the following service. In addition, tipped employees, including Plaintiff LOPEZ, were required to perform additional non-tipped "side work" throughout the course of service.

50. By way of further illustration, Plaintiff LOPEZ's lunch shifts began at 9:30 a.m., although the restaurant did not open for lunch service until well after that time. Plaintiff LOPEZ's

dinner-opener shifts began at 3:30 p.m., approximately one and one-half (1.5) hours before the start of dinner service. Plaintiff LOPEZ's dinner-closer shifts likewise required substantial non-tipped work after the close of service. The hours of operation of Cuerno demonstrate at least one (1) hour of non-tipped work prior to the start of service and at least one (1) hour of non-tipped work after service ends, with additional non-tipped work performed during the course of service.

51. At all relevant times, FLSA Collective Plaintiffs and Tipped Subclass Members who worked as tipped employees were similarly required to engage in non-tipped "side work" for similar amounts of time, exceeding two (2) hours or twenty percent (20%) of each shift, and for continuous periods of time exceeding thirty (30) consecutive minutes.

***Defendant's Failure to Provide Tip Sheets and Management Retention of Cash Tips***

52. At all relevant times, Defendant maintained a tip pool, ostensibly distributed based on the number of hours worked by each tipped employee. However, Defendant did not provide Plaintiff LOPEZ, tipped FLSA Collective Plaintiffs, or Tipped Subclass Members with any tip sheet, tip distribution record, or other document reflecting the total tips collected during each shift, the total tips contributed to the tip pool, or the formula by which tips were distributed.

53. Plaintiff LOPEZ and other tipped employees observed that the amounts of tips reported to them on consecutive paystubs were often identical, even after working different shifts of different lengths and at different volumes of customer traffic, suggesting that Defendant was not accurately tracking, reporting, or distributing the tips actually earned by tipped employees.

54. At all relevant times, Defendant maintained a policy and practice whereby management collected the cash tips received from customers at the end of each service. Cash tips were not pooled, recorded, or distributed to tipped employees through any transparent process. On

information and belief, Defendant's management retained these cash tips, in whole or in part, in violation of the FLSA and the NYLL.

55. Defendant's failure to maintain or provide tip sheets, and its retention of cash tips by management, deprived Plaintiff LOPEZ, tipped FLSA Collective Plaintiffs, and Tipped Subclass Members of tips lawfully earned and prevented them from verifying that they were receiving all tips owed to them. As a direct result, Plaintiffs and tipped Collective and Tipped Subclass Members were unlawfully deprived of gratuities.

56. At all relevant times, Defendant knowingly and willfully operated its business with a policy of unlawfully retaining tips and gratuities from tipped Plaintiff LOPEZ, tipped FLSA Collective Plaintiffs, and Tipped Subclass Members, in violation of the FLSA and the NYLL.

57. At all relevant times, Defendant knowingly and willfully operated its business with a policy of deducting invalid tip credits from tipped Plaintiff LOPEZ's, tipped FLSA Collective Plaintiffs', and Tipped Class Members' wages, in violation of the FLSA and the NYLL.

***Failure to Pay for All Hours Worked Due to Uncompensated Meal Breaks***

58. At all relevant times, Defendant maintained a policy and practice of automatically deducting thirty (30) minutes from Plaintiffs' and Class Members' paid hours each shift for a purported meal break, regardless of whether Plaintiffs and Class Members were actually relieved of all duties for the entirety of that meal break.

59. Defendant required Plaintiffs and Class Members to clock out for their thirty (30) minute meal breaks. However, Defendant's management routinely interrupted Plaintiffs' and Class Members' meal breaks and required them to perform compensable work during their unpaid meal breaks.

60. By way of further example, Plaintiffs were interrupted during their unpaid thirty (30) minute meal break approximately two (2) to three (3) times per week. During each of these interruptions, Defendant's management either directed Plaintiffs to return to their workstations immediately to resume work or managers would interrupt breaks forcing employees to discuss next steps and operations generally. Notwithstanding these regular interruptions and return to work, Defendant continued to deduct the full thirty (30) minute meal break from Plaintiffs paid hours, resulting in unpaid compensable work in violation of the NYLL.

61. During workweeks in which Plaintiff LOPEZ was recorded as working in excess of forty (40) hours, the above timeshaving resulted in a failure to pay overtime. As alleged above, such workweeks include, but are not limited to: the week ending October 12, 2025 (recorded at over 42 hours); the week ending October 19, 2025 (recorded at over 45 hours); the week ending October 26, 2025 (recorded at over 50 hours); and the week ending November 2, 2025 (recorded at over 44 hours). Defendant failed to compensate Plaintiff LOPEZ at the applicable overtime premium rate for all hours actually worked in excess of forty (40) hours per week, in violation of the FLSA.

62. On information and belief, FLSA Collective Plaintiffs and Class Members were similarly subject to Defendant's policy and practice of deducting unpaid meal breaks while requiring them to remain on duty or to perform compensable work during those breaks.

63. By failing to pay Plaintiffs, FLAS Collective Plaintiffs, and Class Members for all hours worked, including time worked during purported meal breaks, Defendant violated the FLSA and the NYLL.

***Unreimbursed Uniform Expenses and Unpaid Uniform Maintenance Allowance***

64. At all relevant times, Defendant required Plaintiffs and Class Members to wear specific, employer-mandated uniforms during their work shifts as a condition of employment. For Plaintiff LOPEZ and other servers, Defendant required the wearing of branded T-shirts bearing a Mexican flag on the back, branded aprons bearing the restaurant's logo, as well as specified pants and shoes. For Plaintiff AVENDAÑO and other dishwashers and porters, Defendant required the wearing of a hat with Defendant's logo and a shirt with Defendant's logo.

65. The employer-mandated uniforms described above are not "ordinary basic street clothing" within the meaning of 12 NYCRR § 146-3.10. Each item bears a distinguishing graphic or logo as the T-shirts and hats either display a Mexican flag or the company logo, and the apron also displays Defendant's restaurant branding. These logos identify the wearer as an employee of Defendant's restaurant and Plaintiffs would not otherwise have selected, purchased, or worn as personal clothing outside of their employment with Defendant. Because these items are identifiable as employer-mandated work apparel rather than clothing of Plaintiffs' own choosing, they constitute a "uniform" as defined under 12 NYCRR § 146-3.10.

66. The employer-mandated uniforms described above do not qualify for the "wash and wear" exception set forth in 12 NYCRR § 146-1.7 as Defendant did not provide "a sufficient number of uniforms, consistent with the average number of days per week worked by the employee" as required by § 146-1.7(b)(4).

67. Defendant would provide no more than one uniform to each employee regardless of the number of days that employee would typically work in a week, which violated the requirements of NYLL and its regulations.

68. Furthermore, Plaintiff LOPEZ was required by Defendant to purchase, at his own expense and without reimbursement, the pants and shoes that constituted part of Defendant's required uniform. Defendant did not reimburse Plaintiff LOPEZ for these required uniform purchases, in violation of 12 NYCRR § 146-1.7.

69. Plaintiffs and Class Members were further required by Defendant to launder and maintain their required uniforms at their own expense and on their own time. Defendant did not pay Plaintiffs or Class Members the uniform maintenance allowance required by 12 NYCRR § 146-1.7.

70. Specifically, Plaintiff LOPEZ was required to clean and maintain the T-shirts (which bore a Mexican flag) and aprons (which bore the restaurant's logo) that Defendant mandated as uniform. Plaintiff AVENDAÑO was likewise required to clean and maintain the hat and shirt (both bearing Defendants' logo) that Defendant mandated as uniform. Neither Plaintiffs were paid the uniform maintenance allowance required under New York law.

71. On information and belief, Class Members were similarly required to wear similar uniforms and were required to purchase, launder, and maintain Defendant's required uniforms without reimbursement on their own time, and without payment of any uniform maintenance allowance.

72. Defendant knowingly and willfully operated its business with a policy of failing to reimburse Plaintiffs and Class Members for required uniform expenses and failing to pay the required uniform maintenance allowance, in violation of the NYLL and 12 NYCRR §§ 146-1.7 and 146-1.8.

***Failure to Pay Call-In Pay Premiums***

73. Pursuant to 12 NYCRR § 146-1.5, an employee in the hospitality industry who, by request or permission of the employer, reports for duty on any day, whether or not assigned to actual work, must be paid at least the applicable wage rate for the lesser of the number of hours actually worked, or the number of hours required by the call-in pay regulation (which is generally a minimum of three (3) hours' pay at the basic minimum hourly wage rate, with no allowances).

74. At all relevant times, Defendant maintained a policy and practice of regularly sending Plaintiffs and Class Members home immediately, or almost immediately, after they reported for and commenced their scheduled shifts, without paying them the call-in pay premium required by 12 NYCRR § 146-1.5.

75. Specifically, Plaintiff LOPEZ was sent home by Defendant's management shortly after his arrival and before working anywhere close to the duration of his scheduled shifts on multiple occasions during his employment. Defendant did not pay Plaintiff LOPEZ the call-in pay premium for these shortened shifts.

76. On information and belief, Class Members were similarly subject to Defendant's policy and practice of sending employees home prior to the completion of their scheduled shifts without paying the call-in pay premiums required by 12 NYCRR § 146-1.5.

77. Defendant knowingly and willfully operated its business with a policy of failing to pay call-in pay premiums to Plaintiffs and Class Members in violation of the NYLL and 12 NYCRR § 146-1.5.

***Plaintiffs' and Class Members' Claims of WTPA Violations***

78. At all relevant times, Defendant failed to provide accurate wage notices and wage statements to Plaintiffs and Class Members, in violation of the Wage Theft Prevention Act

("WTPA")—incorporated into the NYLL—including, but not limited to, NYLL §§ 195(1) and 195(3).

79. At all relevant times, Defendant failed to provide Plaintiffs and Class Members with the wage notices required at the time of hire and annually thereafter, including but not limited to wage notices reflecting Plaintiffs' actual rates of pay, allowances claimed by Defendant (including any tip credit, meal credit, or uniform allowance), the regular pay day, and other information required under NYLL § 195(1).

80. At all relevant times, Defendant's wage statements (to the extent any were provided) failed to accurately reflect, among other things, the tip credit allowance taken from the wages of tipped Plaintiff LOPEZ and tipped Class Members; the actual hours worked by Plaintiffs and Class Members (including hours worked during purported meal breaks); the call-in pay premiums owed; and the uniform maintenance allowance owed under NYLL § 195(3) and 12 NYCRR § 146-2.3.

81. By failing to report all of Plaintiffs' and Class Members' hours, Defendant was able to reduce the employee earnings, and Defendant's contribution to those earnings, that it later reported to the IRS through the employees' W-2 forms, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiffs and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendant was able to hide from them by failing to provide them with proper wage statements.

82. In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

83. New York courts continue to find sufficient standing to support these claims. As one such court stated at summary judgment in *Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026):

> Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that 'Defendants' violations impaired their ability to seek relief due to a lack of information.' More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue. (internal citations omitted).

84. Here, Defendant's conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiffs and Class Members of the actual hours that they worked, the actual rates that they were paid, the tip credit and other allowances claimed against their wages, and the call-in and uniform allowances owed to them, Defendant was able to hide its wrongdoing, as Plaintiffs and Class Members were unaware of the fact that they were being underpaid. Had Defendant provided proper wage statements and notices to Plaintiffs and Class Members, Defendant would have had to either (a) increase the wages to correspond to the hours actually worked and the allowances actually owed, or (b) forthrightly acknowledge, by way

of the wage statement, that the employees' wages did not correspond to the hours they actually worked or the allowances they were owed.

85. Plaintiffs and Class Members were harmed by Defendant's failure to provide accurate wage notices and statements, as they were effectively denied the opportunity and ability to accurately calculate and verify whether they were being paid fully and lawfully. This deprivation enabled Defendant to conceal its violations and prevented Plaintiffs and Class Members from determining and seeking payment for the precise amount of their unpaid wages.

86. Defendant knowingly and willfully operated its business with a policy of failing to provide Plaintiffs and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

87. Plaintiffs retained Lee Litigation Group, PLLC to represent them, FLSA Collective Plaintiffs, and Class Members in this litigation, and have agreed to pay the firm a reasonable fee for its services if they prevail.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

88. Plaintiffs reallege and incorporate all the above allegations as if fully set forth herein.

89. At all relevant times, Defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff LOPEZ and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

90. At all relevant times, Defendant employed Plaintiff LOPEZ and FLSA Collective Plaintiffs within the meaning of the FLSA.

91. At all relevant times, Defendant had gross annual revenues in excess of $500,000.

92. At all relevant times, Defendant had a policy and practice of failing to pay Plaintiff LOPEZ and tipped FLSA Collective Plaintiffs their proper overtime wages, due to an invalid tip credit policy.

93. At all relevant times, Defendant had a policy and practice of unlawfully retaining the tips, gratuities, and surcharges of Plaintiff LOPEZ and tipped FLSA Collective Plaintiffs.

94. At all relevant times, Defendant had a policy and practice of failing to compensate Plaintiff LOPEZ and FLSA Collective Plaintiffs for all hours worked, including time worked during purported meal breaks, in violation of the FLSA.

95. Defendant failed to properly disclose or apprise Plaintiff LOPEZ and FLSA Collective Plaintiffs of their rights under the FLSA.

96. As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff LOPEZ and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

97. Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff LOPEZ and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to unpaid wages for off-the-clock and meal-break work, and damages representing disgorgement of illegally retained tips, plus an equal amount as liquidated damages.

98. Records, if any, concerning the number of hours worked by Plaintiff LOPEZ and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff LOPEZ and FLSA Collective Plaintiffs should be in the possession and custody of Defendant. Plaintiff intends to

obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

99. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

100. Plaintiffs reallege and incorporate by reference all allegations in the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

101. At all relevant times, Plaintiffs and the Class Members were employed by Defendant within the meaning of the New York Labor Law §§ 2 and 651.

102. At all relevant times, Defendant had a policy and practice of refusing to pay Plaintiff LOPEZ and Tipped Subclass Members for all wages earned, including at the statutory rate of one and one-half times the regular rate for overtime hours worked, due to Defendant's invalid tip credit policy and Defendant's policy of impermissible tip retention.

103. At all relevant times, Defendant failed to compensate Plaintiffs and Class Members for all hours worked, including hours worked during purported meal breaks, in violation of the NYLL and 12 NYCRR § 146-2.18.

104. At all relevant times, Defendant failed to reimburse Plaintiffs and Class Members for required uniform expenses and failed to pay the uniform maintenance allowance, in violation of the NYLL and 12 NYCRR §§ 146-1.7 and 146-1.8.

105. At all relevant times, Defendant failed to pay call-in pay premiums to Plaintiffs and Class Members who reported for duty but were sent home prior to completion of their scheduled shifts, in violation of the NYLL and 12 NYCRR § 146-1.5.

106. At all relevant times, Defendant unlawfully retained tips, gratuities, and cash tips collected at the end of service from Plaintiff LOPEZ and Tipped Subclass Members, including by failing to maintain or provide tip sheets and by allowing management to retain cash tips, in violation of the NYLL and 12 NYCRR §§ 146-2.16 and 146-2.17.

107. Defendant failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the NYLL.

108. Defendant failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees, in direct violation of the NYLL § 195(1).

109. Defendant failed to provide proper wage statements with every payment issued to Plaintiffs and the Class Members, as required by NYLL § 195(3).

110. Due to Defendant's NYLL violations, Plaintiffs and the Class Members are entitled to recover from Defendant their unpaid minimum wages, unpaid overtime premiums, unpaid wages for off-the-clock and meal-break work, unreimbursed uniform expenses, unpaid uniform maintenance allowances, unpaid call-in pay premiums, illegally retained gratuities, damages for unreasonably delayed payments, statutory penalties under the WTPA, liquidated damages, reasonable attorneys' fees, costs, and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

i. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

ii. An injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

iii. An award of unpaid overtime wages, due to an invalid tip credit policy, due under the FLSA and the NYLL;

iv. An award of unpaid minimum wages, due to an invalid tip credit policy, due under the NYLL;

v. An award of unpaid wages, including overtime, for all hours worked by Plaintiffs and Class Members for which Defendant failed to compensate them, including hours worked during purported meal breaks, due under the FLSA and the NYLL;

vi. An award of unpaid wages due to Defendant's improper tip retention, including the cash tips collected by management at the end of service, due under the FLSA and the NYLL;

vii. An award of unreimbursed uniform expenses and unpaid uniform maintenance allowances, due under the NYLL and 12 NYCRR §§ 146-1.7 and 146-1.8;

viii. An award of unpaid call-in pay premiums, due under the NYLL and 12 NYCRR § 146-1.5;

ix. An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay wages pursuant to 29 U.S.C. § 216;

x. An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay wages pursuant to the applicable NYLL;

xi. An award of statutory penalties to the Class as a result of Defendant's failure to comply with the wage notice and wage statement requirements of NYLL §§ 195(1) and 195(3);

xii. An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorneys' and experts' fees;

xiii. Designation of Plaintiff LOPEZ as Representative of the FLSA Collective Plaintiffs;

xiv. Designation of this action as a class action pursuant to F.R.C.P. 23;

xv. Designation of Plaintiffs as Representatives of the Class; and

xvi. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

## NY BCL § 630 NOTICE AND DEMAND

Plaintiffs hereby give this notice, in writing, to each shareholder of Defendant, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiffs.

Plaintiffs also demand an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business and Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services. The provisions of this paragraph shall not apply to an investment company registered as such under an act of congress entitled "Investment Company Act of 1940."

Dated: September 10, 2026

Respectfully submitted,
LEE LITIGATION GROUP, PLLC

By: *_/s/ C.K. Lee_*
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*